## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH BIRKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-393-GKF-TLW |
| ) | |
| INTEGRIS GROVE GENERAL HOSPITAL; ) | |
| GRAND LAKE IMAGING, PC; ) | |
| GAIL OFFERMAN, M.D.; ) | |
| MICHAEL FOSTER, M.D., ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER

This matter comes before the court upon the Motion to Amend Scheduling Order (Dkt. #31) of the plaintiff Kenneth Birkes ("Birkes"). Birkes seeks amendment of the current Scheduling Order (Dkt. #25) on two grounds: 1) to permit Birkes' radiology expert, Dr. Cohen, to testify live at trial, and 2) to add Dr. Ruth Berggren as a causation expert.

This medical negligence action was initially filed in state court on March 26, 2009. Birkes voluntarily dismissed that case and re-filed in this court on June 18, 2010. This court entered a Scheduling Order on January 6, 2011, and an Amended Scheduling Order two weeks later on January 19, 2011. On May 18, 2011, the parties filed a joint motion to amend the scheduling order, and the court entered a Second Amended Scheduling Order (Dkt. #25) the following day.

The court concludes that Dr. Cohen's recently announced international trip does not justify a continuance. On May 19, 2011, the court scheduled this matter for jury trial in December at the joint request of the parties. Dr. Cohen and/or plaintiff's counsel could have

addressed or avoided the scheduling conflict months ago. Further, the problem could be rectified by taking a videotaped trial deposition of Dr. Cohen in California prior to December 8, 2011, when his international travel begins.

Birkes also seeks a continuance to add a causation expert. Birkes had previously intended to rely upon the testimony of Dr. William Lewis, an infectious disease specialist and one of Birke's treating physicians, but Dr. Lewis will not voluntarily speak with Birkes' counsel. To understand Dr. Lewis' role in the case it is necessary to review the course of treatment and Birkes' allegations of medical negligence.

Birkes was injured on April 23, 2007, when a piece of drilling equipment crushed and penetrated his boot, sock, and foot. He went to the emergency room at defendant Integris Grove General Hospital where he was treated by defendant emergency room physician Dr. Gail Offerman. Dr. Offerman ordered an x-ray on Birkes' foot. She and defendant Dr. Michael Foster, a radiologist and owner/agent of defendant Grand Lake Imaging, P.C. read the x-ray. Birkes alleges that Dr. Foster breached the standard of care by failing to see a foreign body in Birkes' foot on the x-ray. Birkes alleges Dr. Offerman breached the standard of care by failing, among other things, to assume the possibility of a foreign body in Birkes' wound, and by closing the laceration when an open fracture was contaminated with a foreign body.

Four days later, on April 27, 2007, Birkes saw an orthopedic surgeon, Dr. Brian Howard. X-rays at the time revealed a comminuted fifth metatarsal fracture, and – according to a history later taken by Dr. Lewis – swelling and redness of Birkes' foot were relatively mild. Birkes returned to Dr. Howard four days later, by which time Birkes had experienced a marked increase in pain and swelling of the foot. Dr. Howard became concerned about a possible deep abcess, so he immediately referred Birkes to Dr. Lewis. Lewis reported that Birkes arrived at Lewis' office

in a great deal of pain, and that Birkes had begun seeing blood on his dressing just minutes before his arrival at the office. When Lewis removed the dressing, "copious amounts of purulent material drained from the lateral portion of the foot dorsum in the mid metatarsal area." Dr. Lewis then hospitalized Birkes for intravenous antibiotics and debridement surgery. With regard to Birkes' foot fracture, Lewis' impression on May 1, 2007, was that "the fracture is almost certainly contaminated and the viability of the fifth metatarsal bone and bone fragments is unclear at this time."

In his Discharge Summary of May 7, 2007, Dr. Lewis reported that Dr. Hawkins performed irrigation and debridement of Birkes' left foot on May 2, 2007. Hawkings found "a large foreign body that was probably part of a rubber work boot. This was removed and additional cultures were obtained. These additional cultures grew the same coagulase Staphylococcus and Pseudomonas eruginosa [as had previously been grown from cultures taken from the left foot] . . . postoperatively, over the next 48 hours [Birkes] improved significantly." Thus, Lewis' medical records address causation. Defendants' contention that "there is nothing in the medical records of Dr. Lewis that would indicate any possible testimony he might offer on the legal issue of causation in this lawsuit" is demonstrably inaccurate.

Plaintiff's counsel reports he made numerous attempts to set up a meeting with Dr. Lewis, and finally was told that the doctor was very busy and really did not have time to meet. Dr. Lewis' office advised counsel to submit something in writing for the doctor to consider. When plaintiff's counsel did so, he received no response from the doctor. On August 31, 2011, plaintiff's counsel wrote Dr. Lewis to advise him of the trial date and asking the doctor to contact counsel so they could schedule a meeting to discuss his testimony. Dr. Lewis did not respond.

Pursuant to Fed. R. Civ. P. 16(b)(4) the court may modify its scheduling order for "good cause." Some appellate courts consider four factors in evaluating a trial court's exercise of discretion as to the existence of good cause to modify a scheduling order: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

Regarding the first factor, this court concludes that plaintiff's counsel reasonably believed, based on Dr. Lewis' medical records, that it was unnecessary to retain an expert witness to explain the cause of Birkes' infection. Plaintiff's counsel was not required to list Lewis as an expert because "[a] treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999). Counsel's reasonable belief that Dr. Lewis would simply testify as to the matters the doctor dictated in his own records constitutes a reasonable explanation for not having identified a causation expert. Although Birkes could compel Dr. Lewis, his own treating physician, to testify at trial through the power of subpoena, this court concurs that counsel ought not be compelled to subpoena a doctor who is wholly unwilling to even discuss the matters Lewis wrote in the medical record of their mutual client.

Regarding the second factor -- the importance of the testimony -- this case requires expert testimony concerning the cause of the infection in Birkes' left foot.

Regarding the third factor – potential prejudice in allowing the testimony – defendants will be prejudiced by the delay occasioned by a continuance, and by the additional expense of deposing and evaluating the new expert and developing defendants' response to that testimony.

However, defendants do not state in their filings that they have not previously identified an infectious disease expert to testify at trial. Had Dr. Lewis voluntarily testified as plaintiff's counsel reasonably expected, defendants would have had to develop a response to that causation testimony. Finally, the court notes that, even if the plaintiff offers sufficient expert testimony on causation at trial, it would appear that a central issue for the jury in this matter will be whether the physicians breached their respective standards of care. The issue presently before the court does not touch upon or prejudice the defendants with regard to the issues of standards of care.

As to the fourth factor, a continuance would disrupt the current trial schedule, but the court can limit the continuance to the minimum necessary to permit the proposed causation expert to be deposed and a proper defense prepared.

Upon weighing each of the relevant factors, this court concludes that the motion should be granted so as to permit the plaintiff to add a causation expert.

WHEREFORE, the Motion to Amend Scheduling Order (Dkt. #31) is granted. The Pretrial Conference and Trial Date currently scheduled are stricken to be reset, together with other necessary deadlines, at a scheduling conference to be held on the 5th day of December, 2011, at 10:00 a.m.

DATED this 21st day of November, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma